UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

KARA L. RYHERD,                            )
                                           )
          Plaintiff,                       )
                                           )
v.                                         )        No.  2:21 CV 57 CDP
                                           )
KILO KIJAKAZI, Acting Commissioner         )
of Social Security,                        )
                                           )
          Defendant.                       )

## MEMORANDUM AND ORDER

Plaintiff Kara L. Ryherd brings this action under 42 U.S.C. § 405 seeking

judicial review of the Commissioner's final decision denying her claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401, *et seq.*  Because the Commissioner's decision is supported by

substantial evidence on the record as a whole, I must affirm.

### Procedural History

On March 1, 2016, the Social Security Administration denied Ryherd's

November 2015 application for DIB in which she claimed she became disabled on

August 21, 2014, because of degenerative disc disease, lumbar bulging disc,

lumbar bone spurs, sciatica, degenerative joint disease of the right knee,

depression, anxiety, sleep apnea, thyroid disorder, and osteopenia.  A hearing was

held before an administrative law judge (ALJ) on November 1, 2017, at which

Ryherd and a vocational expert (VE) testified.  On May 7, 2018, the ALJ denied Ryherd's claim for benefits, finding that VE testimony supported a conclusion that Ryherd could perform her past relevant work as a retail store manager and area manager.  After the Appeals Council denied Ryherd's request for review of the ALJ's decision, Ryherd filed a civil action in this Court seeking judicial review. *Ryherd v. Saul*, Case No. 2:18CV116 CDP (E.D. Mo.).  On May 21, 2020, I remanded the matter to the Commissioner for further proceedings, finding that the ALJ's determination that Ryherd's fibromyalgia was not a medically determinable impairment was not supported by substantial evidence on the record as a whole.

Upon receipt of the Court's Order, the Appeals Council vacated the Commissioner's earlier decision and remanded the case to an ALJ for further proceedings consistent with the Order.  The ALJ held a supplemental hearing on January 25, 2021, at which Ryherd and a VE testified.  On March 3, 2021, the ALJ issued a decision finding that Ryherd could perform work existing in the national economy and was therefore not disabled.  The Appeals Council denied Ryherd's request for review of the ALJ's decision.   The ALJ's March 3, 2021, decision is the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

In this action for judicial review, Ryherd claims that the ALJ continued to err in evaluating her fibromyalgia impairment and improperly accorded partial to significant weight to opinion evidence from physicians who did not have the full

record before them when they rendered their opinions – specifically, record evidence of the fact and effects of her fibromyalgia impairment.  Ryherd also claims that the ALJ's determination that her statements of symptoms were inconsistent with the record is not supported by substantial evidence on the record as a whole, and that the record actually supports a contrary finding.  After the Commissioner responded to her claims, Ryherd filed a reply brief in which she also asserted that the ALJ erred in finding her able to perform the jobs identified by the VE because the vocational requirements for such work exceed Ryherd's residual functional capacity (RFC).[1]  Ryherd asks that I reverse the ALJ's decision and award benefits or, alternatively, remand the case for further proceedings.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

The record on this current appeal contains the full administrative record that was before the Court on Ryherd's first appeal – which included medical records dated through October 2017 – and additional medical and testimonial evidence dated through January 2021.  For purposes of this appeal, I have considered the entire administrative record now before me, the parties' statements of fact from the first appeal, and Ryherd's brief and unobjected-to statement of facts submitted on this appeal.  I also adopt the summary of evidence set out in my May 2020

---

[1] Because Ryherd raised this argument for the first time in her reply brief, I granted the Commissioner's request to file a sur-reply on the claim.

Memorandum and Order in Case No. 2:18CV116 (ECF 23).  Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   <u>Legal Standard</u>

To be eligible for DIB under the Social Security Act, Ryherd must prove that she is disabled and that her disability began before her insured status expired. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Walker v. Colvin*, 124 F. Supp. 3d 918, 932 (E.D. Mo. 2015).  The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The first three steps involve a determination as to

whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy.  If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience.  *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

I must affirm the Commissioner's decision if it is not based on legal error

and there is substantial evidence on the record as a whole to support the conclusion. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).  Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.    The ALJ's Decision

The ALJ found that Ryherd met the insured status requirements of the Social Security Act through December 31, 2020.  The ALJ found that Ryherd had not engaged in substantial gainful activity from August 21, 2014, through her date last insured.  The ALJ found that Ryherd had the following severe impairments during the relevant period:  fibromyalgia, degenerative disc disease of the lumbar spine,

depression, bilateral knee osteoarthritis, depression, and bilateral shoulder tendinosis – but that they did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 1538-39.)

>The ALJ found that Ryherd had the RFC to perform light work,
>
>except she cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs.  The claimant can perform no more than occasional balancing on slippery, moving, or unexpectedly uneven surfaces.  She can engage in occasional stooping but no kneeling, crouching or crawling and she is limited to no more than occasional overhead reaching, pushing, or pulling bilaterally.  The claimant can perform frequent handling and fingering.  She can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. The claimant cannot work at a fast pace such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that allows her to sustain a flexible and goal-oriented pace.  She is limited to occasional interaction with coworkers, supervisors and public.

(Tr. 1542-43.)  The ALJ determined that Ryherd could not perform her past relevant work as a department manager or retail store manager.  Considering Ryherd's RFC, age, education, and work experience, the ALJ found VE testimony to support a conclusion that Ryherd could perform other work as it exists in significant numbers in the national economy, and specifically, as a shipping/ receiving weigher, routing clerk, and warehouse support worker.  (Tr. 1553-54.) The ALJ thus found that Ryherd was not under a disability from August 21, 2014, through her date last insured.  (Tr. 1555.)

C.     RFC Determination

Ryherd contends that the ALJ's RFC determination is not supported by substantial evidence on the record as a whole because 1) the ALJ's improper evaluation of the medical opinion evidence caused the ALJ to not fully consider the effects of her fibromyalgia impairment, and 2) the ALJ improperly assessed her subjective statements of symptoms.

A claimant's RFC is the most she can do despite her physical or mental limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record.  *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).  In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace."  *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).  Some medical evidence must support the ALJ's RFC determination.

*Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12.  The burden to prove the claimant's RFC rests with the claimant, however, and not the Commissioner.  *Pearsall*, 274 F.3d at 1217.

    1.    *Evaluation of Symptoms*[2]

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s).  SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).  If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record.  *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third-party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)

---

[2] In 2016, the Social Security Administration issued a ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).   The factors to be considered in evaluating a claimant's statements, however, remain the same.  *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

(subsequent history omitted).  While an ALJ must acknowledge and consider these factors, she need not discuss each one before discounting a claimant's subjective complaints.  *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021).  If the ALJ finds that the claimant's statements are inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony.  SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  I must defer to the ALJ's determination if it is supported by good reasons and substantial evidence.  *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Here, the ALJ acknowledged the factors set out in 20 C.F.R. § 404.1529 and found that Ryherd's statements of symptoms were "somewhat inconsistent" with the objective medical and other evidence of record, including Ryherd's reports of daily activities; the measures taken to alleviate her symptoms; and the location, duration, frequency, and intensity of her symptoms.  (Tr. 1543.)  For the following reasons, the ALJ's assessment is supported by substantial evidence on the record as a whole.  While it is not a model of clarity, an arguable deficiency in opinion-writing technique is not a basis for remand if it has no effect on the outcome.  *See Grindley*, 9 F.4th at 631.  "An ALJ's reasoning need only be 'clear enough to allow for appropriate judicial review.'"  *Id.* (quoting *Sloan v. Saul*, 933 F.3d 946,

951 (8th Cir. 2019)).

The ALJ thoroughly summarized the objective medical evidence of record, which included results from several diagnostic tests showing mild to moderate impairments of the spine caused by degenerative disc disease, osteoarthritis and ligament tears involving the right knee, shoulder tendinosis, and positive trigger points.  The ALJ also summarized medical evidence showing that Ryherd's pain and limited movement associated with her knee and early back conditions improved after respective surgeries and with physical therapy, and that injection therapy helped acute exacerbations of such pain; that Ryherd's tendinosis, osteoarthritis, and fibromyalgia symptoms improved with injection therapy and medication to such a degree that Ryherd went several months between treatment sessions and reported normal daily activities in the interim; and that Ryherd exhibited normal range of motion, strength, and reflexes during most examinations, albeit with some pain.  "[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5.  An ALJ is therefore permitted to discount a claimant's subjective statements when they are inconsistent with objective medical evidence. *Grindley*, 9 F.4th at 631.  *See also Gregg  Barnhart*, 354 F.3d 710, 713-14 (8th Cir. 2003) ("The crucial question is not whether [claimant] experienced pain, but whether [his] credible subjective complaints prevent him from

performing any type of work.").

The ALJ also addressed Ryherd's reports of her daily activities, including her work on the farm herding sheep, bottle-feeding lambs, and performing general farming chores.  While Ryherd testified that her farm work consisted only of completing paperwork every couple of weeks, her reports to various healthcare providers showed a much more manual-labor aspect of her work.  The ALJ also noted that Ryherd played internet games, was able to drive, and cared for her father who lived with her, and that she reported to healthcare providers in September 2020 that she was caring for her husband who had had back surgery.  *Cf. Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (providing care for son and ill girlfriend, doing yard work, shopping in stores, going out alone, riding in car, playing games, and using computer inconsistent with claims of disabling pain); *Cruze v. Chater*, 85 F.3d 1320, 1325 (8th Cir. 1996) (caring for farm animals inconsistent with complaints of disabling pain).  I am aware "in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability engage in substantial gainful activity," *Grindley*, 9 F.4th at 631 (internal quotation marks and citation omitted), but Ryherd's reported activities here go well beyond those requiring relatively minimal exertion.

The ALJ also noted the effectiveness of Ryherd's injection therapy, and the

record shows that such therapy provided Ryherd significant relief for several

months at a time with reports to her healthcare providers that she could resume

normal activities during such periods.  Indeed, Ryherd visited a physician on only

one occasion in 2018 after a recent onset of pain and reported that she obtained

benefit from injections to her shoulders six months earlier and could engage in

normal activity.  She received additional shoulder injections at that appointment.

After receiving those injections, Ryherd did not seek or receive additional

treatment for impairment-related pain until eighteen months later – in November

2019 – at which time she received injections to the shoulders and left hip.  She

received her next injection ten months later in September 2020.  While Ryherd had

other healthcare visits during this period, they were for isolated occurrences

unrelated to her severe medically determinable impairments – in January 2019, for

pain associated with slipping on ice; in June 2019, for an injury to her right knee

after being kicked by a goat; a primary care visit in August 2019 for symptoms

associated with sinusitis, at which time Ryherd reported no pain, weakness, or

difficulty with walking, and physical examination was normal; a primary care visit

in December 2019 for sinus issues, at which time Ryherd reported no pain or

weakness and that she engaged in moderate exercise by walking; and visits in early

2020 for a knee injury sustained while herding sheep and being rammed against a

fence.  The ALJ also noted that medication appeared to control Ryherd's

fibromyalgia pain but that she stopped this treatment because the medication made her feel "loopy."  The record shows, however, that during the period Ryherd stopped this medication she had obtained significant relief from injection therapy, as described above.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Mabry v. Colvin*, 815 F.3d 368, 391-92 (8th Cir. 2016).  The ALJ adequately considered Ryherd's medications, including their dosage, effectiveness, and side effects.  *See* 20 C.F.R. § 404.1529(c)(3)(iv) (explaining the agency considers the "effectiveness" of medication when evaluating symptoms).

As to third-party observations, Ryherd criticizes the ALJ's determination to discount the observations of her spouse given his relationship with Ryherd.  But such a personal relationship is not a prohibited factor for the ALJ to consider.  *See Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011) (third-party statements likely influenced by their affection for claimant).  The ALJ did not err in this regard.

Finally, the ALJ also addressed Ryherd's work history (*see* Tr. 1538-39, 1553), functional restrictions (*see* Tr. 1543, 1549, 1550), and precipitating and aggravating factors (*see* Tr. 1543, 1545).  While the ALJ did not exactly flesh out these § 1529 factors in her decision, she was not required to discuss each factor before discounting Ryherd's subjective complaints.  *Grindley*, 9 F.4th at 630.

The ALJ thoroughly reviewed Ryherd's testimony and other evidence of

record and, in a manner consistent with and as required by *Polaski*, evaluated Ryherd's statements of symptoms and articulated reasons clearly enough to support her finding that they were "somewhat inconsistent" with the record. Because this determination is supported by good reasons and substantial evidence on the record as a whole, I must defer to it. *Julin*, 826 F.3d at 1086.

2.    *Medical Opinion Evidence*[3]

As an initial matter, I note that Ryherd's primary argument regarding the ALJ's treatment of medical opinion evidence is based on authority regarding the appropriate manner by which to determine whether fibromyalgia is a medically determinable impairment.  But the ALJ here found that Ryherd's fibromyalgia was a medically determinable impairment and was severe.  Accordingly, much of Ryherd's argument is not relevant to the disposition of this case.  Ryherd also appears to argue that by meeting the criteria for a medically determinable impairment, fibromyalgia is per se disabling.  But "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Perkins*, 648 F.3d at 900. *E.g.*, *Grindley*, 9 F.4th at 631.

Ryherd also argues that the ALJ erred by considering and according weight to the medical opinions of Drs. Byrnes, Hunter, and Levy, because I had held in

---

[3] In March 2017, the Social Security Administration amended its Regulations governing the evaluation of medical evidence.  For evaluation of medical opinion evidence, the new rules apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because the claim under review here was filed before March 27, 2017, the rules set out in 20 C.F.R. § 404.1527 apply.

Case No. 2:18CV116 that their opinions could not support a non-disability finding since they did not consider Ryherd's fibromyalgia impairment. Ryherd misconstrues that Order. In that earlier action, the ALJ determined that Ryherd's claimed fibromyalgia was not a medically determinable impairment. Because of that finding, the ALJ did not consider or evaluate the effects of that impairment in determining whether Ryherd was disabled. I concluded that the ALJ erred in weighing the medical evidence in that case by 1) ignoring substantial opinion and other evidence that supported Ryherd's 2016 fibromyalgia diagnosis; and 2) according significant weight to and basing the RFC determination on Drs. Byrnes', Hunter's, and Levy's opinions because they were rendered before Ryherd was diagnosed with and exhibiting symptoms of fibromyalgia. My determination that the ALJ erred in according significant weight to the Byrnes/Hunter/Levy opinions was not a forever ban on their consideration. My earlier Order only held that the ALJ erred in relying on them to find Ryherd not disabled when those rendering the opinions did not have before them substantial evidence of a medically determinable impairment.

In the current action, the ALJ recognized that Drs. Byrnes and Hunter rendered their opinions in 2016 and therefore did not have the opportunity to review the evidence submitted through the date of the hearing or to see and hear Ryherd's testimony. (Tr. 1551.) The ALJ accorded partial weight to their

opinions that Ryherd had postural limitations, reasoning that the evidence showed that Ryherd's fibromyalgia, osteoarthritis of the knees, and shoulder impairment were severe.  Notably, the ALJ also stated that she included *additional* limitations in the RFC because of the severity of these impairments.  (*Id.*)[4]

In September 2015, Dr. Levy reviewed medical records for a worker's compensation evaluation to assess Ryherd's ability to return to work after undergoing lumbar fusion surgery in August 2014.  (Tr. 546-52.)  Dr. Levy agreed with Ryherd's treating providers' assessment that Ryherd could function at the light to sedentary level of work.   As to Ryherd's specific functional abilities, Dr. Levy opined that in an eight-hour workday, Ryherd could sit for eight hours, stand for four hours, and walk for four hours.  He opined that Ryherd should not climb ladders and could occasionally climb two flights of stairs.  He further opined that Ryherd could occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, and occasionally push and pull up to fifty pounds.  He opined that Ryherd could occasionally bend, squat, and twist, and had unrestricted use of her upper and lower extremities.  (Tr. 550.)  The ALJ accorded Dr. Levy's opinion significant weight as to Ryherd's condition as it existed one year after her lumbar surgery.  (Tr. 1552.)  Notably, as with Drs. Byrnes' and Hunter's opinions,

---

[4] Such additional physical limitations include no crouching; frequent handling and fingering; and occasional overhead reaching, pushing, or pulling bilaterally. *Compare* Tr. 90-91, 108-09 *with* Tr. 1542.

the ALJ's RFC determination included more restrictive limitations than as opined by Dr. Levy, including additional postural limitations as well as manipulative, reaching, and pushing/pulling limitations.

The ALJ did not err in considering these medical opinions to the extent they addressed Ryherd's ability to engage in work-related activities at the time the opinions were rendered.  The ALJ acknowledged in her decision that there was considerably more evidence of Ryherd's impairments and their effects that post-dated the Byrnes/Hunter/Levy opinions, including and especially evidence of Ryherd's fibromyalgia; and she thoroughly summarized and weighed this evidence in determining Ryherd's RFC.  Unlike in the earlier case, the ALJ here did not rely exclusively on these remote opinions to assess Ryherd's RFC.  She instead considered all the medical and other evidence of record, including extensive treatment records from August 2014 through December 2020 (Ryherd's date last insured), as well as additional opinion evidence from a treating physician who opined in March 2017 that Ryherd should stay active and had no restrictions other than no severe bending, twisting, or heavy lifting.  (Tr. 1377, 1552.)  "Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo.

Mar. 30, 2020). *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at \*6 (E.D. Mo. May 6, 2019). Substantial evidence on the record as a whole supports the ALJ's treatment of the opinion evidence of record that Ryherd now challenges.

As detailed by the ALJ throughout her decision, there was sufficient medical and other evidence of record supporting her conclusion that Ryherd had the RFC to perform light work with additional and significant restrictions. The ALJ thoroughly discussed specific medical facts, nonmedical evidence, and the consistency of such evidence when viewed in light of the record as a whole, and she assessed Ryherd's RFC based on the relevant, credible evidence of record. *Accord* SSR 96-8p, 1996 WL 374184, at \*7 (Soc. Sec. Admin. July 2, 1996). Accordingly, it cannot be said that the ALJ's RFC decision is not supported by substantial evidence on the record as a whole. I cannot reverse the decision even if substantial evidence may support a different outcome. *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007) (even with "full awareness" of the "very real difficulties [claimant] appears to experience," the Court cannot reverse a decision that is based on substantial evidence).

D.    Other Work in the National Economy

The ALJ posed a hypothetical question to the VE based on Ryherd's age, education, work experience, and RFC, and asked if any work existed in the

national economy that such a person could perform.  (Tr. 1596-97.)  In response,

the VE testified that the person could perform light work as a shipping and

receiving weigher, DOT[5] 222.387-074; routing clerk, DOT 222.687-022; and

warehouse support worker, DOT 209.687-026.  (Tr. 1597.)  The VE also testified

that such a person could perform the following sedentary work as well:  addresser,

DOT 209.587-010; document preparer, DOT 249.587-018; and surveillance system

monitor, DOT 379.367-010.  (Tr. 1597-98.)  In her written decision, the ALJ

concluded that the VE's testimony as to available light work supported a

conclusion that Ryherd could perform such work and was therefore not disabled.

(Tr. 1554-55.)

Ryherd claims that the DOT requirements for the light jobs identified by the

VE exceed her RFC and that the ALJ thus erred in relying on VE testimony to find

her not disabled.  Specifically, Ryherd contends:  1) that the Reasoning Level of 3

for the shipping and receiving weigher job exceeds her RFC limitation to simple,

routine tasks; 2) that a routing clerk includes work on an assembly line and work

that is not routine; and 3) that the DOT does not include a job listed as a

"warehouse support worker" – and to the extent the DOT number provided for this

job is for a mail clerk, that job also requires a Reasoning Level of 3.  Ryherd

further contends that the sedentary jobs proffered by the VE at the hearing also

---

[5] *Dictionary of Occupational Titles*.

have a Reasoning Level of 3.

For the following reasons, the ALJ did not commit reversible error in concluding that Ryherd could perform other work that exists in significant numbers in the national economy.

Assuming arguendo that Ryherd's RFC limitation to simple, routine work precludes her from performing jobs that require a Reasoning Level of 3, the routing clerk job the VE identified requires a Reasoning Level of 2.  DOT 222.687-022, 1991 WL 672133.  Ryherd makes no argument that she cannot perform jobs with a Reasoning Level of 2.  Ryherd argues, however, that the DOT definition for this job includes a reference to being designated as a "Conveyor Belt Package Sorter," which appears to describe assembly line work, and that sorting boxes and packages according to route, driver, or type is not simple or routine.

First of all, Level 2 reasoning is consistent with simple, routine work activity, *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010), and Ryherd provides only supposition that the DOT routing clerk definition is in conflict with itself, that is, that its job requirements of sorting and assigning exceed Level 2 reasoning. And Ryherd's assertion that the job involves assembly line work is not correct. The DOT definition states that some routing clerk work "*may* be designated" as conveyor belt work.  1991 WL 672133 (emphasis added).  There is no absolute requirement that assembly line work is part of the job.  Regardless, it is well

- 21 -

established that DOT definitions

> are simply generic job descriptions that offer the approximate
> maximum requirements for each position, rather than their range.
> [N]ot all of the jobs in every category have requirements identical to
> or as rigorous as those listed in the [Dictionary of Occupational
> Titles].
>
> . . .
>
> The DOT itself cautions that its descriptions may not coincide in
> every respect with the content of jobs as performed in particular
> establishments or at certain localities.  In other words, not all of the
> jobs in every category have requirements identical to or as rigorous as
> those listed in the DOT.

*Jones*, 619 F.3d at 978 (internal quotation marks and citations omitted) (alterations

in *Jones*).  There is nothing in the record to suggest that the VE ignored the lack-

of-assembly-line or simple-routine-work limitations when testifying that a person

with those limitations could perform work as a routing clerk.  *See Courtney v.

Commissioner of Soc. Sec. Admin.*, 894 F.3d 1000, 1004-05 (8th Cir. 2018) (ALJ

can properly assume VE framed answers based on factors ALJ instructed to take

into account).  Accordingly, the ALJ properly considered VE testimony in

concluding that Ryherd could perform work as a routing clerk.

Only one occupation need be identified as work existing in the national

economy as long as it exists in significant numbers.  *See* 20 C.F.R. § 404.1566(b).

The VE testified here that 104,810 routing clerk jobs exist nationally.  (Tr. 1597.)

This number is sufficient to show that a significant number of jobs exist in the

national economy that Ryherd can perform.  *E.g.*, *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (affirming finding that 10,000 jobs in the national economy and 200 in state constitute a significant number); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (affirming finding that 30,000 jobs in national economy and 650 jobs in state constitute a significant number).  Accordingly, even excluding the other jobs identified by the VE, there is a significant number of routing clerk jobs that Ryherd is capable of performing with the RFC as determined by the ALJ.  The ALJ did not err in relying on VE testimony to find Ryherd able to perform other work as it exists in significant numbers in the national economy.  *See Flynn v. Berryhill*, No. 4:16 CV 1927 CDP, 2018 WL 1410233, at *6 (E.D. Mo. Mar. 21, 2018).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case

differently. *Id*. *See also Buckner*, 646 F.3d at 556; *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Ryherd was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Kara L. Ryherd's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 6th day of September, 2022.

- 24 -